UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL RAYMOND BALL,
#255522,

        Petitioner,

                                Case No. 12-CV-14732

v.

                                HON. MARK A. GOLDSMITH

LLOYD RAPELJE,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

Petitioner Randall Ball, confined at the Pugsley Correctional Facility in Kingsley, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). In his pro se application, Petitioner challenges his conviction for failing to register as a sex offender, Mich. Comp. Laws § 28.729; and being a fourth-felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

### II. BACKGROUND

Petitioner was convicted of the above charges following a jury trial in the Shiawassee County Circuit Court.

Staci Smith was the manager at the Owosso Mini-Storage. Smith moved into an apartment above the mini-storage unit in 2004. In July 2008, Smith lived in apartment B. Petitioner's cousin, Gary Bates, lived in apartment C. Bates had moved into apartment B in

2007, when he was the Mini-Storage manager. Smith had met Petitioner through Bates. 2/10/09 Trial Tr. at 201-207 (Dkt. 9-4).

Smith began working for Bates at the Mini-Storage in May 2008, filling in for him when he went on vacation. Smith began opening and closing the office in June of 2008. Id. at 207-208. Petitioner moved into apartment C on July 5, 2008. Smith saw Petitioner pull into the mini–storage complex in his vehicle. When questioned by Smith, Petitioner informed her that he was moving into Bates' apartment. Smith testified that Petitioner informed her that he was moving in because his father had kicked him out of his house. Petitioner carried bags of groceries and clothes upstairs to the apartment from his car. Id. at 209-210. During the month of July, Smith testified that she saw Petitioner on a daily basis at the mini-storage apartment complex. Id. at 211, 219. Smith observed Petitioner retrieve and return a key for Bates' apartment from the plow truck. Smith testified that she saw Petitioner's car in the parking lot in the mornings almost daily and saw him get into his car twice a week. Smith heard Petitioner coming up the stairway to the apartments several times a week. Smith could hear Petitioner's voice at about ten o'clock at night. Id. at 213-217. Smith also testified that while Bates was on vacation the smoke alarms went off after dark. Smith went to investigate and observed Petitioner inside of Bates' apartment cooking a steak. While Bates was on vacation, Smith spoke to Petitioner a few times and would hear music from the apartment. Id. at 219-220.

Smith testified that Bates returned to the Mini-Storage at the end of July. She knew this because it was only a few days before she took over managing the Mini-Storage after Bates was fired. Id. at 218-219. Bates moved out on August 4, and Smith moved into his old apartment with the help of Petitioner and Bates. Id. at 220-222.

A few days after the police spoke with Smith, Bates had a conversation with her, in which "Mr. Bates wanted me to get with him and Mr. Ball's dad and get a story straight." Id. at 222-223.

Michigan State Trooper Fiebernitz testified that he was the sex offender coordinator for Shiawassee County. Trooper Fiebernitz testified about the registration and verification requirements of persons listed on the Sex Offender Registry in Michigan. Id. at 129-134. Trooper Fiebernitz identified Petitioner's registry record and the DD-4A form, which included details about reporting requirements and the Petitioner's initials. Petitioner had registered to 11065 Goodall Road in Shiawassee County. The DD-4A form specifically indicated that Petitioner must report within 10 days of changing his residence and provide a new address for the Registry. Id. at 136-139.

Andrew Zeeman was Petitioner's parole agent. Zeeman testified that Petitioner had reported his address quarterly to him, and Petitioner had never provided an address different than the one at Goodall Road. On August 6, 2008, Zeeman received information that caused him to contact the State Police and to look for Petitioner. The State Police also contacted the Sheriff's Department, which was in the area. While in route to Petitioner's registered address, Zeeman heard over the radio that Petitioner had been arrested in a traffic stop. Id. at 145-146, 149. Detectives Jason Duffield and Scott Shenk testified regarding the traffic stop. Id. at 179-80, 194.

Zeeman and the two detectives went to the Goodall Road address, where Petitioner's father gave them permission to search the room where Petitioner had stayed. Id. at 146-148. Agent Zeeman observed that there was nothing on the floor, a few items on the night stand, and very little in the room at all. The closet only contained winter-type clothing, even though it was summer time and the weather was hot outside. There were no dirty clothes. The dresser

3

contained only knickknacks.   Id. at 148-150.   Detective Duffield testified similarly to his observations of the lack of the appearance of Petitioner's presence in the room.   Id. at 181-183.

Agent Zeeman and Detectives Duffield and Shenk subsequently went to Bates' apartment.   Agent Zeeman testified that Bates told him that Petitioner had been living with him in the garage apartment.   In the garage, Agent Zeeman observed clothes hanging and in a pile. Id. at 151-155.   Detective Duffield testified to finding a shoebox containing Petitioner's personal effects, including prescription pill bottles, sex offender registration paperwork, receipts, and other various pieces of paper.   Id. at 186.   Agent Zeeman also testified to the contents of the shoebox, which he had searched and then photographed.   Id. at 160-162.   Agent Zeeman also identified a number of Petitioner's receipts, which were admitted at trial.   Id. at 163-166.

Petitioner testified that he left his parents' home for "just a day or two to let things cool off" after a confrontation with his father, and that he was making the room in their home appear as though he had left.   Petitioner testified that he worked most of July on his parents' farm from sun-up to sun-down.   2/11/09 Trial Tr. at 51-52 (Dkt. 9-5).   Petitioner testified that he helped out Bates at the end of June and into July around the Mini-Storage, often working on the plow truck at ten or eleven o'clock at night.   Id. at 41.   Bates, on the other hand, testified that Petitioner helped clean the storage units and work on vehicles two-to-three times a week during work hours.   Id. at 14.   Petitioner claimed that he placed clothes from his car in a storage unit at the Owosso Mini-Storage and was taking up a bag of clothes and groceries to Bates' apartment on July 18 to cook dinner.   Id. at 37-38.   Petitioner testified that it was July 18th when Smith observed him cooking a steak in Bates' apartment.   Id. at 43.   Petitioner claimed that when Smith asked him whether he was moving in, Petitioner claimed that he informed her that he had "just come to stay for a minute."   Id. at 50.   Petitioner testified he stayed at Bates' apartment for only

4

three days, but he acknowledged that he might have spent the night on other occasions "maybe once or twice." Id. at 38-39, 53. Petitioner admitted that Bates had left a key to the apartment in the plow truck "in case [he] ever needed to stay there . . . ." Id. at 42. Petitioner claimed that he might have been around in his vehicle in the mornings because, if he was in the area, he would help wake up Bates for work, or it could have been that he spent the night on those occasions. Id. at 42. Petitioner testified that he spent only one or two nights a week away from his parents' home. Id. at 39. On cross-examination, Petitioner acknowledged that he had contact with the police the night before his arrest on the current charge, but he had failed to report the contact to his parole officer within twenty four hours of the contact, as required by law. Id. at 54.

Bates testified that Petitioner spent the night at his apartment a couple of nights while Bates was on vacation because he did not want to leave the apartment unoccupied. Although Bates then testified it could have been up to four days that Petitioner stayed at his apartment. Bates acknowledged that Petitioner might have spent an additional night or two, and Petitioner might have stayed a night to watch a baseball game. Bates claimed that he left the key for Petitioner so that Petitioner could have it for the weekend when Bates went up north. Id. at 15, 22-23.

Petitioner testified that he returned the clothes from storage to his car on August 1st, when Bates moved out of the Mini-Storage apartment C. Petitioner claimed that it was Bates who moved those articles into Bates' new garage apartment location before they were observed on August 6th. Id. at 40-41, 45-46. Petitioner admitted that the shoebox containing personal items that had been recovered from Bates' garage apartment belonged to him. Id. at 46. Bates, however, testified that Petitioner's personal possessions that the police claimed to find in his garage apartment had actually been in Petitioner's car. Id. at 19-20.

Petitioner's conviction was affirmed on appeal. People v. Ball, No. 291433, 2010 WL 1924998 (Mich. Ct. App. May 13, 2010), leave denied 788 N.W.2d 439 (Mich. 2010) (Dkts. 9-7, 9-8). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. People v. Ball, No. 08-7856-FH, Order (Shiawassee County Cir. Ct. April 12, 2011) (Dkt. 9-12). The Michigan Court of Appeals denied Petitioner leave to appeal. People v. Ball, No. 304796 (Mich. Ct. App. Nov. 8, 2011), leave denied 815 N.W.2d 478 (Mich. 2012) (Dkts. 9-9, 9-10).

Petitioner seeks a writ of habeas corpus on several grounds. First, Petitioner argues that the evidence of the failure to notify a change of residence was legally insufficient. Pet. at 21. Second, Petitioner argues that he was denied his constitutional right to present a defense when the court declined to instruct the jury on the legal meaning of domicile. Id. at 27. Petitioner also puts forth arguments on the grounds of ineffective assistance of both trial and appellate counsel, that Mich. Comp. Laws § 28.729 is unconstitutionally vague and overbroad, and that overbroad testimony was allowed at trial and used in his presentence investigation report. Id. at 23-26, 29, 31.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme

Court.  Id.  Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. (quotation marks omitted).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

## IV.  ANALYSIS

The Court first addresses and rejects Petitioner's substantive claims, and then addresses whether to issue a certificate of appealability, as well as whether to allow Petitioner leave to proceed in forma pauperis.

### A.  Petitioner's Substantive Claims

#### 1.  Sufficiency of Evidence Claim

Petitioner first claims that there was insufficient evidence to show that he either changed or vacated his residence, or that he willfully failed to notify the proper authorities, as required to support his conviction for failing to register as a sex offender.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318-319 (emphasis in original). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. In fact,

9

the Jackson standard "is so demanding that a defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." Davis v. Lafler, 658 F.3d 525, 534 (6th Cir. 2011) (brackets and quotation marks omitted).  Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state-court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial.  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  It is the province of the fact finder to weigh the probative value of the evidence and resolve any conflicts in testimony.  Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992).   A habeas court, therefore, must defer to the fact finder for its assessment of the credibility of witnesses.  Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner first claims that there was insufficient evidence to show that he either changed or vacated his residence, so as to convict him of failing to notify the proper authorities of an address change within ten days.  The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant argues that there was insufficient evidence to show that he resided in any place other than his parents' house-where there is no dispute that he was properly registered-for more than ten days at a time.
>
> Defendant does not parse the statute correctly. The requirement is to provide notice of a change within ten days of making that change.  It is not a requirement to provide notice if there has been a change that has gone on for more than nine days.  In other words, the ten days refers only to the time period given to a registrant in which to communicate notice to the proper authorities.  It does not in any way help define what constitutes a changed residence in either of the above-quoted statutes.  The only rational reading of the statutes is that as soon as a registrant vacates or changes the "place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging," or the "place

10

at which the person resides the greater part of the time" if there are multiple such places, the registrant must report that vacation or change to the appropriate authorities. The registrant has, however, ten days in which to make that report.

Here, there was testimony and evidence showing that defendant was told by his father to leave his parents' house, that defendant packed his belongings into his car, and that he stayed with his cousin for some extended period of time. There was evidence tending to show that defendant regularly slept at his cousin's apartment, that defendant stored his personal belongings there, that defendant had access at will to that apartment, and that his room at his parents' house was essentially a vacant spare room. The jury was free to disbelieve his and his cousin's testimony to the contrary.

Ball, 2010 WL 1924998, at *1-2.

Petitioner was convicted for failing to register as a sex offender, by violating the provisions of Mich. Comp. Laws § 28.725(1) of the Sex Offenders Registration Act ("SORA"), which requires a sex offender to notify the proper authorities of a change of address within ten days. When Petitioner was convicted, section 28.725(1) stated:[1]

An individual required to be registered under this act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile within 10 days after the individual changes or vacates his or her residence, domicile, or place of work or education, including any change required to be reported under [Mich. Comp. Laws § 28.724a].

Ball, 2010 WL 1924998, at *1. The SORA defined "residence" for "registration and voting purposes" as:

that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the

---

[1] The Michigan legislature amended this portion of the statute by 2011 Public Act No. 17, with an effective date of July 1, 2011.

> greater part of the time shall be his or her official residence for the
> purposes of this act.

Id. (quoting Mich. Comp. Laws § 28.722(g)[2]).  Thus, a person's "residence" under the SORA is

"a combination of three things: that place where a person (1) habitually sleeps, (2) keeps

personal effects, and (3) has a regular place of lodging."  People v. Dowdy, 802 N.W.2d 239,

245 (Mich. 2011).  The Michigan Supreme Court in Dowdy further noted:

> The words that the Legislature used to define "residence" have a
> broad scope and contemplate a wide array of "residences."
> However, the definition of "residence" does not include every
> location where a person might sleep, regardless of the length of the
> stay.  A "residence," for purposes of SORA, is only that place
> where an offender habitually sleeps and establishes regular
> lodging.

Id. (emphasis original).   The Dowdy court further concluded that nothing within SORA

suggested that the term "residence" was "synonymous with a home, a specific street address, or

even a physical structure.  Rather, the definition of 'residence' merely contemplates a 'place.'"

Id. at 246.

In the present case, there was sufficient evidence for a rational trier of fact to conclude

that Petitioner had changed his residence, and he was required to report this change to the proper

authorities in accordance with SORA.  The testimony and evidence showed that Petitioner had

been ordered by his father to leave his parents' house.  Petitioner packed his belongings into his

car and moved into his cousin's apartment, where he remained for more than ten days.  Smith

testified that she saw petitioner at Bates' apartment daily throughout the month of July, heard

him coming up the stairs of the apartment several times a week, and actually saw him cooking a

steak in Bates' apartment on one occasion.  Petitioner had also told Smith that he was moving

into Bates' apartment because his father had kicked him out of the house.  The evidence at trial

---

[2] The Michigan legislature also amended this portion of the statute by 2011 Public Act No. 17.
The definition of "residence" is now located at Mich. Comp. Laws § 28.722(p).

established that Petitioner was storing his personal belongings at Bates' apartment and had complete access to it.  Agent Zeeman and Detectives Duffield and Shenk searched Petitioner's room at his parents' house and found that there were few, if any, of Petitioner's personal items in this room.  Under the circumstances, there was sufficient evidence for the jury to conclude that Petitioner had changed his residence to Bates' apartment.

Petitioner further argues that even if there was evidence that he had changed his residence, there was no evidence that he willfully failed to notify the proper authorities of the change in address.  In order to be guilty of violating Mich. Comp. Laws § 28.729(1), the prosecutor must show that a person who violated the provisions of the act did so willfully.  For purposes of the SORA, the term "willfully" requires something less than specific intent, but requires a knowing exercise of choice.  People v. Lockett (On Rehearing), 659 N.W.2d 681, 682 (Mich. Ct. App. 2002).

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant conceded that he was well aware of his obligation to notify the authorities of any change in his residence.  There was also testimony that defendant failed to advise his parole officer about the police contact he had had the night before, and there was also testimony that Smith was asked to "get a story straight" between herself, Bates, and defendant's father.  Thus, there was some evidence from which it might be inferred that defendant was not completely honest with law enforcement officials.  Furthermore, as noted, there was ample evidence from which the trier of fact could have concluded that defendant was residing elsewhere than his registered address; his failure to notify the authorities could be deemed more likely to be willful given his otherwise prompt and diligent reporting.  In other words, his high level of conscientiousness suggests that his failure to report was not merely an oversight.

Ball, 2010 WL 1924998, at *2 (emphasis in original).

13

In the present case, a rational trier of fact could have concluded from the evidence that petitioner willfully failed to report his change of address to the proper authorities. Petitioner was aware of the reporting requirement. Petitioner failed to advise his parole agent about a police contact that he had the night before. There was also testimony that Smith had been asked to get her story "straight" between herself, Bates, and Petitioner's father, from which the jury could have reasonably inferred that Petitioner had not been completely honest with law enforcement officials. Moreover, in light of the fact that Petitioner had previously been diligent in reporting any address changes, the jury could infer that his failure to report his change of address was not merely an oversight. Finally, the jury could infer from Petitioner's failure to report his police contact from the night prior to his arrest to his parole officer that he was willfully concealing his change of address.

Finally, to the extent that Petitioner challenges the credibility of the prosecution witnesses, he would not be entitled to relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. Schlup v. Delo, 513 U.S. 298, 330 (1995). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. Id.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his first claim.

### 2.  Jury Instruction Claim

In his fourth claim, Petitioner contends that he was deprived of a fair trial because the trial judge refused to instruct the jury that a "domicile" was something different from a "residence" under the provisions of the SORA.

The Michigan Court of Appeals rejected Petitioner's claim.  Although agreeing with Petitioner that the judge's instruction was incorrect, the court concluded that the error had no effect on the verdict.  Ball, 2010 WL 1924998, at *4.  Although the terms "residence" and "domicile" have different meanings, Mich. Comp. Laws § 28.725(1) uses the terms "residence" and "domicile" "disjunctively."  Id.  It was possible for Petitioner to change his residence, so as to trigger the SORA's reporting requirements, without changing his domicile.  Thus, the court concluded that Petitioner's claim that he never changed his domicile was not relevant to whether he changed his residence.  Id.  The court further concluded that the instruction as given did not prevent Petitioner from "presenting a vigorous argument that he never changed his residence." Id.  Thus, Petitioner failed to show that the judge's erroneous instruction affected the verdict.  Id.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state-court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is "less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge.  Jones v. United States, 527 U.S. 373, 391 (1999).   Further, any ambiguity,

inconsistency, or deficiency in a jury instruction does not, by itself, necessarily constitute a due process violation.  Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction.  Id. at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction.  Estelle v. McGuire, 502 U.S. 62, 72 (1991).

Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict.  See Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008); California v. Ray, 519 U.S. 2, 5 (1996).

In the present case, the trial judge's failure to instruct the jurors that a sex offender's domicile was different than his residence did not have a substantial and injurious effect on the jury's verdict, so as to entitle Petitioner to relief.  Under the provisions of Mich. Comp. Laws § 28.725(1), Petitioner was required to notify the authorities of any change of residence, even if he did not change his domicile.  As mentioned above regarding Petitioner's first claim, there was sufficient evidence for a rational trier of fact to conclude that Petitioner had changed his residence.  Accordingly, it was irrelevant whether Petitioner had changed his domicile for purposes of the SORA's reporting requirement.  Thus, the judge's failure to instruct the jurors that a sex offender's domicile was different than his residence did not have a substantial and injurious effect or influence on the verdict.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his fourth claim.

16

### 3. Petitioner's Remaining Claims are Unexhausted and Procedurally Defaulted

Respondent contends that Petitioner's second, third, fifth, and sixth claims are procedurally defaulted because Petitioner did not properly exhaust these claims with the Michigan courts and no longer has a remedy to properly exhaust these claims.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. §§ 2254(b)-(c). See Picard v. Connor, 404 U. S. 270, 275 (1971). Petitioner raised his second, third, fifth, and sixth claims for the first time in his application for leave to appeal before the Michigan Supreme Court on his direct appeal after the Michigan Court of Appeals affirmed his conviction on his appeal of right. See Application for Leave to Appeal (Dkt. 9-8).

When an appellant fails to appeal an issue to the Michigan Court of Appeals, the issue is considered waived before the Michigan Supreme Court. Lawrence v. Will Darrah & Assocs., Inc., 516 N.W.2d 43, 44 n. 2 (Mich. 1994) (citing Butcher v. Treasury Dep't., 389 N.W.2d 412 (Mich. 1986)). Therefore, Petitioner's failure to raise his second, third, fifth, and sixth claims in his appeal to the Michigan Court of Appeals precluded the Michigan Supreme Court from considering the new issues that Petitioner raised in his application for leave to appeal before that court.

More importantly, raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. See Castille v. Peoples, 489 U.S. 346, 351 (1989). Because Petitioner failed to present his second, third, fifth, and sixth claims on his direct appeal with the Michigan Court of Appeals, his subsequent presentation of these claims to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes. See Skinner v. McLemore, 425

17

F. App'x 491, 494 (6th Cir. 2011) (holding that petitioner's attempt to raise prosecutorial misconduct claims for the first time in his motion for leave to appeal to the Michigan Supreme Court was "insufficient to exhaust those claims for purpose of habeas review"); Farley v. Lafler, 193 F. App'x 543, 549 (6th Cir. 2006) (affirming district court's decision that petitioner did not exhaust his jury instruction claim when he raised it for the first time in his application for leave to appeal with the Michigan Supreme Court)

Although Petitioner raised an ineffective assistance of counsel claim in his direct appeal with the Michigan Court of Appeals, this claim was different than the ineffective assistance of counsel claims that are contained in his second and third claims, which were raised for the first time only in his application for leave to appeal to the Michigan Supreme Court. A habeas petitioner is required to present to the state courts "the same specific claims of ineffective assistance [of counsel] made out in the habeas petition." Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995). Because the ineffective assistance of counsel claims raised in Petitioner's second and third claims are different than the ineffective assistance of counsel claim presented to the Michigan Court of Appeals on his direct appeal, these claims were not fairly presented to the state courts as part of Petitioner's direct appeal. See Caver v. Straub, 349 F.3d 340, 346-347 (6th Cir. 2003) (holding that "to extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state court, the claim has not been fairly presented to the state court"); see also Brandon v. Stone, 226 F. App'x 458, 459 (6th Cir. 2007) ("A claim is fairly presented if that claim has been presented to the state courts under the same theory in which it is later presented in federal court.").

Petitioner returned to the state courts and filed a post-conviction motion for relief from judgment, in which he raised his second, third, fifth, and sixth claims. However, in his

application for leave to appeal before the Michigan Court of Appeals, Petitioner raised only the following claim in his heading in the statement of questions in his brief:

> Defendant-Appellant was denied a meaningful review of his 6.500 motion. Judge Lostracco disregarded defendant's showing that his court-appointed appellate attorney disregarded many important issues that Mr. Ball wanted to have addressed by the Court of Appeals.   The judge also disregarded defendant's claim and showing that he is indeed innocent and he failed to properly apply MCFR 6.508(1)(3) and waive the "cause" requirement.

See Application for Leave to Appeal from the Denial of a Motion for Relief From Judgment at 8 (Dkt. 9-9).  Likewise, in his application for leave to appeal to the Michigan Supreme Court, Petitioner simply stated: "Defendant-Appellant was denied a meaningful review of his 6.500 motion."  See Application for Leave to Appeal at 8 (Dkt. 9-10).

In order to satisfy the exhaustion requirement, a habeas petitioner must fairly present to the state courts either the substance of, or the substantial equivalent of, the federal claim that he or she is presenting to a federal habeas court.  See Picard v. Connor, 404 U.S. 270, 275 (1971); Koontz v Glossa, 731 F.2d 365, 369 (6th Cir. 1984).  For purposes of federal habeas review, exhaustion requires that a claim raised in a habeas petition must be presented to the state courts under the same theory in which it is later presented in federal court.  Williams v. Bagley, 380 F.3d 932, 969 (6th Cir. 2004).   Thus, "[e]ven the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review."  Rayner v. Mills, 685 F.3d 631, 643 (6th Cir. 2012).  A claim may be considered fairly presented only if the petitioner asserted both the factual and legal basis for his claim in the state courts.  Wagner v. Smith, 581 F.3d 410, 414-415 (6th Cir. 2009).

Petitioner did not present the factual and legal basis of his second, third, fifth, and sixth claims in his post-conviction appeals before the Michigan Court of Appeals or the Michigan

19

Supreme Court.  Petitioner failed to include any of his claims in the statement of questions contained in the brief on appeal that he filed with the Michigan Court of Appeals.  Michigan Court Rule 7.212(C)(5) requires a statement of the questions involved, with each issue for appeal separately numbered.  Dando v. Yukins, 461 F.3d 791, 797 (6th Cir. 2006).  By failing to include his second, third, fifth, or sixth claims in the heading of the brief that he filed with the Michigan Court of Appeals, Petitioner did not fairly present these claims to the state courts for purposes of properly exhausting this claim.  See Wagner, 581 F.3d at 415-416 (while "fair representation" does not mean that the applicant recite "chapter and verse" of constitutional law, the applicant is "required to make a specific showing of the alleged claim").  Although Petitioner may have briefly mentioned his substantive claims within his brief, a habeas petitioner's "sporadic and undeveloped allusions" to a claim do not satisfy the exhaustion requirement.  Vasquez v. Jones, 496 F.3d 564, 568 (6th Cir. 2007).  Most of the discussion contained in Petitioner's applications for leave to appeal before the Michigan Court of Appeals and the Michigan Supreme Court dealt with the trial judge's failure to properly review Petitioner's 6.500 motion.  Although Petitioner may have briefly mentioned his underlying claims, he only did so in the context of arguing that the trial judge had denied him meaningful review of his post-conviction motion, not as independent substantive claims.  Because Petitioner did not present his second, third, fifth, and sixth claims before the Michigan appellate courts under a legal theory that was separate and distinct from his claim that he had been denied meaningful review of his post-conviction motion, these claims have not been fairly presented to the state courts.  Wagner, 581 F.3d at 417.

Denial of a motion for relief from judgment is reviewable by the Michigan Court of Appeals and the Michigan Supreme Court upon the filing of an application for leave to appeal. See M.C.R. 6.509; M.C.R. 7.203; M.C.R. 7.302.  A criminal defendant in Michigan must appeal

the denial of a post-conviction motion to the Michigan Court of Appeals and the Michigan Supreme Court in order to satisfy the exhaustion requirement of raising his or her claims at all levels of state court review.  See Mohn v. Bock, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002). Although Petitioner may have presented his remaining four claims to the trial court in his post-conviction motion, his failure to raise these claims in his post-conviction appeal before the Michigan Court of Appeals and the Michigan Supreme Court precludes a finding of exhaustion. See Jacobs v. Mohr, 265 F.3d 407, 416-417 (6th Cir. 2001) (concluding that petitioner did not "fairly present" an ineffective assistance of counsel claim where, following the trial court's dismissal of his petition for post-conviction relief, petitioner's arguments on appeal indicated that he did not continue to make the argument concerning his trial counsel's failure to file a direct appeal); see also Harris v. Lindamood, 355 F. App'x 940, 941-942 (6th Cir. 2009) (because petitioner "failed to consistently pursue the claim" through the state's ordinary appellate review procedures, petitioner procedurally defaulted it.)

Unfortunately, Petitioner no longer has any available state court remedies with which to exhaust these claims.  Under Michigan Court Rule 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment.  See Gadomski v. Renico, 258 F. App'x 781, 783 (6th Cir. 2007); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Petitioner has no remaining state court remedies with which to exhaust his second, third, fifth, and sixth claims.  If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner "will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and

actual prejudice to his defense at trial or on appeal." Hannah v. Conley, 49 F.3d 1193, 1195-1196 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. Id. at 1196 n. 3.

In the present case, Petitioner has failed to show cause to excuse his default. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the court declined to review the procedurally defaulted claims on the merits. Id.; see also Welch v. Burke, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999).

Finally, assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule because his claims would not entitle him to relief. The cause and prejudice exception is "conjunctive," requiring proof of both cause and prejudice. Matthews v. Ishee, 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his remaining claims.

**B.  Certificate of Appealability**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 483-484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  Id.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

### C.  Leave to Proceed In Forma Pauperis

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

### V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants Petitioner leave to appeal in forma pauperis.

SO ORDERED.


s/Mark A. Goldsmith
Dated: October 30, 2014                    MARK A. GOLDSMITH
        Detroit, Michigan                  UNITED STATES DISTRICT JUDGE

24

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2014.

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER